**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SHARON PIMENTO, on behalf of
CHANTEL ROBINSON,**

        **Plaintiff,**

  **vs.**                                            **Civil Action 2:09-CV-716
Judge Frost
Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

### REPORT AND RECOMMENDATION

        This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income benefits on behalf of her minor daughter.  This matter is now before the Court on the Plaintiff's *Statement of Specific Errors,* Doc. No. 12, and the Commissioner's *Memorandum in Opposition*, Doc. No. 18.

        Plaintiff Sharon Pimento filed an application for supplemental security income, on behalf of her minor daughter, on April 28, 2004.  The application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.

        On May 16, 2007, plaintiff and her daughter, represented by counsel, appeared and testified at the administrative hearing, as did Phyllis Rosen, Ph.D., who testified as a psychological expert.  In a decision dated May 25, 2007, the administrative law judge found that the child's condition does not satisfy the standards of disability applicable to an individual under the age of 18 and that she is therefore not

entitled to benefits.  *A.R.*, 69-85. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 22, 2009. *A.R.*, 2-4.

**I. STANDARD**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

A child is disabled under the Social Security Act if she has a medically determinable impairment that results in "marked and severe

**2**

functional limitations" which meet the 12-month durational requirement of the Act. 42 U.S.C. §1382(a)(3)(C)(I). In determining whether a child's impairments satisfy this standard, the Commissioner's regulations prescribe a 3-step sequential evaluation. 20 C.F.R. §416.924(b)-(d). First, the Commissioner must determine whether the child is engaging in substantial gainful activity. *Id.* If so, the child is not disabled and the Commissioner is not required to further review the claim. *Id.* Second, the Commissioner must determine whether the child has a "severe" impairment, *i.e.,* one that is more than a slight abnormality and causes more than minimal functional limitation. *Id.* If the child does not, the child is not disabled. *Id.* Lastly, the Commissioner must determine if the child has an impairment that meets, medically equals, or functionally equals a listed impairment. *Id.* If so, the child is disabled. *Id.*

For an impairment or combination of impairments to be functionally equivalent to a listed impairment, the child must have "marked" limitations in two functional areas or an "extreme" limitation in one functional area. To make this determination, it is necessary to evaluate the child's abilities in six "domains": (1) the ability to acquire and use information; (2) the ability to attend to and complete tasks; (3) the ability to interact and relate with others; (4) the ability to move about and manipulate objects; (5) the ability to care for oneself; and (6) one's general health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I) - (vi).

A "marked" limitation is defined in the regulations, in relevant part, as follows:

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s)

3

> interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean...
>
> *         *         *
>
> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities.

20 C.F.R. § 416.926a(e)(2)(i)-(iii).

Plaintiff takes the position that the evidence establishes a marked limitation of function in at least two of the following domains: acquiring and using information, attending and completing tasks and interacting and relating with others. *Plaintiff's Statement of Specific Errors*, at 9. *See also A.R.*, 404. The administrative law judge found that Chantel suffers a marked limitation of function only in the domain of interacting and relating with others.  *A.R.*, 83. According to the administrative law judge, Chantel's limitation of function in the other two domains is "less than marked."  *A.R.*, 81, 82.

## II. EVIDENCE

At the time of the administrative hearing, Chantel was 13 years of age.  She has never repeated a grade, *A.R.*, 410, and is not in special education classes but does receive tutoring and special test modification services.  *A.R.*, 405.  School records reflect a great deal

4

of absenteeism, but her mother explained much of the absenteeism is attributable to Chantel's participation in a program that substitutes for "an out of school suspension." *A.R.*, 413. Her disciplinary problems, which are significant, include threatening and hitting school staff. *A.R.*, 414, 420 – 421.

Chantel was first diagnosed with ADHD in 2002. *A.R.*, 425. *See A.R.* 219. She is prescribed medication for the condition and receives medical care and counseling at Children's Hospital behavioral clinic. *A.R.*, 407. Michael C. Thomasgard, M.D., Chantel's treating physician, reported in 2006 that it is difficult for Chantel to calm herself once she becomes angry or upset. *A.R.*, 378. Dr. Thomasgard also commented at that time that Chantel had worked to bring several grades of D up to B. *Id*.

Chantel's mother testified that Chantel "gets along okay" with her 15 year old sister, but "she's always fighting with" her 4 year old brother. *A.R.*, 408. She is always impulsive and "real fidgety." *A.R.* 409. She has difficulty sleeping. *A.R.*, 408.

School records include a number of test results and teacher evaluations. Chantel has had a number of IEPs, initially addressing speech and language issues. *See, e.g., A.R.,* 189, 201. In 2002, when Chantel was in the 3rd grade, her language skills were regarded as equal to those of her peers, although she had a "mild" articulation delay. *A.R.*, 214 – 15. Later that same year, after a transfer to a different school system, it was determined that Chantel would receive support in the areas of math, language arts and reading. *A.R.*, 219. Her full scale I.Q. score was 90, *see A.R.* 311, and school officials noted no "severe discrepancy between ability and achievement . . . ." *A.R.,* 219, 312.

A smaller class group was recommended, however, because of her "difficulty with attending skills. . . ." *A.R.*, 314.

Chantel's performance on the Metropolitan Achievement Test, administered in March 2002 and again in 2004, reflected below average scores in almost all subjects. *A.R.*, 364, 366. On Ohio's Sixth Grade Proficiency Test, administered in March 2005, Chantel's scores were "limited" in mathematics and "proficient" in reading. *A.R.*, 362.

In May 2004, after another change in school system, the teacher for all Chantel's classes except math and science reported that Chantel has "very little problem" in the area of acquiring and using information, *A.R.,* 283, and no problems in attending and completing tasks. *A.R.*, 284. Academic progress at that time was rated "unsatisfactory" only in mathematics. *A.R.*, 363. Chantel's problems in interacting and relating with others were daily and serious, however. *A.R.*, 285. *See also A.R.*, 363.

Chantel's final grades in June 2006 ranged from As to Cs in all subjects except a D in Spanish Language and Fs in Physical Education and Computer Awareness. *A.R.*, 348.

The record has also been reviewed by four state agency psychologists, all of whom have concluded that, although Chantel's impairment is severe, it does not meet, medically equal, or functionally equal the listings. *A.R.,* 165, 172.[1]

Dr. Rosen, the psychological expert, testified at the

---

[1] One state agency psychologist seemed to indicate, by way of a checked box, that Chantel has marked limitation in two domains. *A.R.*, 170. The Court assumes that this box was checked in error, because the remainder of that psychologist's report is inconsistent with that conclusion. *See A.R.*, 165 - 71.

administrative hearing that the record documents a diagnosis of ADHD[2] but that the condition does not meet or equal a listed impairment. *A.R.*, 427. Dr. Rosen specifically testified that Chantel's behavior and distractibility result in a moderate – *i.e.*, less than marked – limitation her ability to acquire and use information. *Id.* Chantel's ability to attend and complete tasks is also moderately limited. *Id.* Her ability to interact and relate with others, however, is markedly limited. *A.R.*, 427- 28. According to Dr. Rosen, there is no evidence of limitation of function in any other domain. *A.R.*, 428.

Dr. Rosen was examined by plaintiff's attorney regarding Chantel's scores on various achievement tests administered over the years. As she read those scores, Dr. Rosen "had the impression overall that [Chantel] was making some [academic] progress." *A.R.*, 431.[3] Dr. Rosen expressly testified that Chantel's performance on the various academic achievement tests did not change her opinion that Chantel has only a moderate limitation of function in the domain of acquiring and using information. *A.R.*, 436.

### III. ADMINISTRATIVE DECISION

The administrative law judge relied on Dr. Rosen's testimony that Chantel's condition neither meets nor equals Listing 112.11. *A.R.*, 77. The administrative law judge went on to find that, although Chantel

---

[2] Dr. Rosen also speculated that Chantel may suffer from bipolar disorder. *A.R.*, 425.

[3] Plaintiff makes much of some initial confusion evidenced in the record on the part of Dr. Rosen, who had not seen certain of those test results prior to the administrative hearing. *Plaintiff's Statement of Specific Errors*, at 6, 10. As the Court reads the transcript, however, it is apparent that Dr. Rosen's testimony regarding those test results was both competent and substantive. *See A.R.*, 432 - 36.

has a marked limitation in interacting and relating with others, *A.R.*, 82 - 83, she has a less than marked limitation in acquiring and using information, A.R., 80 - 81, and in attending and completing tasks, *A.R.*, 81 - 82.  With respect to the latter two findings, the administrative law judge reasoned:

> Psychological testing shows IQs in the 90s.  The claimant's teachers report no difficulty in this domain.  Chantel is able to comprehend instructions and written material.  She is also able to express ideas, and her school grades, in regular classes, are primarily in the "A" to "C" range.  Her mother goes with her to the library to work on projects.  Academically the claimant is slower in comprehending math problems and needs extra time to take tests and complete assignments.  However, a large part of this difficulty is the claimant's attitude towards school work.  She does not regular[ly] meet with her tutor, has frequent absences, and, as previously noted, [h]as a severe behavior problem.  Her medication does not interfere with her ability to acquire and use information.
>     *      *      *
> . . . [T]he claimant does need extra time to complete assignments and to take tests.  However, she has no problem in attending to activities that she likes.  Her teachers report that Chantel is capable of performing school work when she chooses to.  She is able to adequately focus on her school work and on her daily activities.  Chantel is in regular classes, and most of her grades are at least average.  Her medication, when she takes it, controls her ADHD.

A.R., 81 - 82 (citations to record omitted).

**IV. DISCUSSION**

   This Court concludes that the decision of the administrative law judge in this regard enjoys substantial support in the record.  The state agency psychologists and Dr. Rosen all concluded that Chantel has marked limitation of function only in the domain of interacting and relating with others, as the administrative law judge found.  Moreover,

**8**

Chantel's academic record, including her grades from 2006 and comments from various teachers, also offers support for the administrative law judge's findings.  The fact that the record may also contain evidence to the contrary does not, of course, permit this Court to reverse the decision of the Commissioner.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

July 23, 2010                                  s/Norah McCann King
                                         Norah M<sup>c</sup>Cann King
                                      United States Magistrate Judge